1
2
3                                                              O
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11   PROFESSIONAL TOWING, LLC,          Case No. 8:22-cv-00333-KES
12           Plaintiff,
13        v.                             MEMORANDUM OPINION AND
                                               ORDER
14   CITY OF ORANGE, et al.,
15           Defendants.
16
17                                           **I.**
18                                   **INTRODUCTION**
19        Petitioner/Plaintiff Professional Towing, LLC, dba Alberto's Towing
20   ("Plaintiff" or "Alberto's Towing") is suing Defendant City of Orange ("City") and
21   seven City legislators (the "Individual Defendants"[1]) (with the City, "Defendants")
22   in connection with the City's decision not to award Plaintiff a contract to provide
23   towing services for the Orange Police Department ("OPD").  The operative First
24   Amended Petition/Complaint ("FAP/C") alleges four claims against Defendants

---

[1] The Individual Defendants are (1) Mayor Mark A. Murphy; (2) Mayor Pro Tempore Kimberlee Nichols; (3) Councilperson Chip Monaco; (4) Councilperson Arianna Barrios; (5) Councilperson Jon Dimitru; (6) Councilperson Kathy Tavoularis; and (7) Councilperson Ana Gutierrez.  (Dkt. 1-6 at 4.)

1    for: (1) writ of administrative mandate; (2) "a traditional or other writ of mandate";

2    (3) relief under the Brown Act, California Government Code section 54950 et seq.;

3    and (4) damages and declaratory relief for civil rights violations under 42 U.S.C.

4    § 1983.[2]  (Dkt. 1-6.)

5         In June, 2023, Defendants moved for summary judgment.  (Dkt. 42.)

6    Plaintiff opposed the motion (Dkt. 44), and the County replied (Dkt. 47).  On

7    August 18, 2023, the Court held a hearing on the motion.  (Dkt. 48.)  For the

8    reasons stated herein, Defendants' motion is GRANTED.

## II.

## LEGAL STANDARD

11        Summary judgment should be granted where "the movant shows that there is

12   no genuine dispute as to any material fact and the movant is entitled to judgment as

13   a matter of law."  Fed R. Civ. P. 56(a).  The moving party "bears the initial

14   responsibility of informing the district court of the basis for its motion, and

15   identifying those portions of … [the factual record that] demonstrate the absence of

16   a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323

17   (1986).  Once the moving party satisfies its initial burden, the non-moving party

18   must demonstrate with admissible evidence that genuine issues of material fact

19   exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86

20   (1986) ("When the moving party has carried its burden under Rule 56 … its

21   opponent must do more than simply show that there is some metaphysical doubt as

22   to the material facts.").  Where the non-moving party will bear the burden of proof

23   on an issue at trial, the moving party can prevail merely by pointing out to the

24   district court that there is an absence of evidence to support the nonmoving party's

25   case.  Celotex, 477 U.S. at 324-25.

26

27        [2] The FAP/C also has claims against the County of Orange, but Plaintiff
     dismissed those claims in April 2023.  (Dkt. 40, 41.)

28

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Although a court must draw all inferences from the facts in the non-movant's favor, id. at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.

### EVIDENTIARY ISSUES

Defendants identify 36 material, undisputed facts ("UFs"). (Dkt. 42-1.) Plaintiff contends that all but UF ##1, 5, 6, 18, 19, 20, 21, 23 are disputed. (Dkt. 44-1.) Often, however, the evidence cited by Plaintiff does not controvert the corresponding UF. Moreover, many of the UFs are immaterial to the legal grounds on which the Court relies. In the summary below, the Court sets forth material facts established by admissible evidence and uncontroverted by other evidence.[3]

### IV.

### SUMMARY OF UNDISPUTED FACTS

On March 4, 2021, the OPD issued a Request for Proposal for a Towing and Storage Services Agreement ("RFP"). (UF #1.) A true and correct copy of the RFP without attachments is at Dkt. 42-12. (Id.)

---

[3] The City objected to Plaintiff's declarations from witnesses not identified in initial disclosures. (Dkt. 47-2.) At the hearing, Plaintiff claimed that the City had done the same thing. Neither party sought to reopen discovery by making the required showing under Federal Rule of Civil Procedures 56(d). The Court OVERRULES all such objections. The Court considered all relevant testimony made on each declarant's personal knowledge. Fed. R. Civ. P. 56(c)(4).

Per the RFP, the "City reserve[ed] the right to … award its total requirements to one Responder or to apportion those requirements among two or more Responders as the City may deem to be in its best interest." (Dkt. 42-12 at 6.) The RFP told responders that they needed to meet certain qualifications, including the following:

> The towing service must maintain adequate authorized personnel, equipment and facilities at all times during the duration of the agreement period.
>
> See attachments for exact qualifications:
> Attachment A: Contract Process and General Requirements for Official Police Towing and Storage Services
> Attachment D: Sample of the Official Police Towing and Storage Agreement
> Attachment E: Orange Police Department Policy 502

(Dkt. 42-12 at 10.)

A true and correct copy of OPD Policy 502 is at Dkt. 42-13. (UF #2.) Among other things, OPD Policy 502 sets forth requirements for tow truck maintenance, tow yard security, an "open area storage," and an "inside enclosure" for vehicle storage. (Dkt. 42-13 at 2-4.) OPD Policy 502 § 502.5.5 addresses the inspection of tow trucks and facilities to verify compliance with the RFP's requirements. (Id. at 15-16; UF #3.)

On March 4, 2021, City Purchasing Officer, Wanda Alvarez, sent a courtesy email to Alberto's Towing to inform it that the RFP had been posted on the City's website, and she provided a link. (UF #5.) Responses to the RFP were due on April 1, 2021. (UF #6.) By April 1, the City had received four responses from (1) Alberto's Towing; (2) Archie's Towing; (3) Truxyz, Inc., doing business as Tows R Russ; and (4) Southside Towing and Storage Services. (UF #7; Dkt. 44 at 8-9; Dkt. 44-2 ¶ 13.) The three companies other than Plaintiff already had a towing contract with the City. (Id.)

OPD Sgt. Cullen inspected the facilities of all four towing companies that

had responded to the RFP.  (Dkt. 42-4 ¶ 5.)  His score sheets are submitted for Southside Towing (at Dkt. 42-18), Tows R Russ (at Dkt. 42-19), and Archie's Towing (at Dkt. 42-20).  (UF #9.)  Sgt. Cullen prepared a summary sheet showing that he scored the other three towing companies in the 90s, whereas he scored Alberto's Towing 56.125.[4]  (UF #10; Dkt. 42-21; Dkt. 42-4 ¶ 7.)

On June 8, 2021, the City Council conducted a regular meeting to, among other items of business, vote on the award of towing contracts pursuant to the RFP. (Dkt. 42-6 ¶ 5.)  In advance, Sgt. Cullen prepared Agenda Item 3.14 Report, a true and correct copy of which, without attachments, is at Dkt. 42-22.  (UF #11.)  In his report, Sgt. Cullen recommended awarding contracts to the other three responders but said, "Alberto's Towing did not meet the minimum requirements."  (Dkt. 42-22 at 1 ¶ 2.)  His report conveyed the scores for all four responders.  (Id. at 2.)

On June 3, 2021, City staff published the Agenda for the June 8, 2021 City Council meeting on the City's website.  The City made the Agenda and Agenda Packet, including Sgt. Cullen's Agenda Item 3.14 Report, available on its website and at the front counter of the City Clerk's Office.[5]  (UF #13, #14; Dkt. 42-6 ¶ 2.)

As part of the consent calendar, the City Council voted to approve Agenda Item 3.14, which was a recommendation to award three-year Towing and Storage Service contracts to Tows R Russ, Archie's Towing, and Southside Towing.  (UF #15; Dkt. 42-25 at 4, 7; Dkt. 42-26.)  The minutes from the June 8 meeting were approved on June 13, 2021.  (Id.)

On June 11, 2021, Alberto Castellanos, Plaintiff's managing member, emailed Ms. Alvarez about the RFP's status.  (UF #19; Dkt. 42-27; Dkt. 44-2 at 3

---

[4] The Court accepts as undisputed that these are Sgt. Cullen's scores.  The Court recognizes that Plaintiff disputes the accuracy of Sgt. Cullen's scores.

[5] Plaintiff's evidence does not dispute UF #13.  (Dkt. 44-1 at 10.)  At best, Plaintiff demonstrates that neither it nor the other responders received actual notice that the City would consider the RFP responses at the June 8 meeting.

¶ 1.)  Mr. Castellanos sent a follow-up email on June 22.  (Id.)  On June 22, 2021, Ms. Alvarez responded by email and provided a link to the Agenda and Agenda Packet for the June 8 City Council meeting.  (Dkt. 42-5 at 2 ¶ 7; Dkt. 42-27.)

On September 7, 2021, counsel for Plaintiff, Maryann Cazzell, sent the City a demand letter contesting the award of towing contracts to the other three responders and the City Council's decision not to award a towing contract to Alberto's Towing.[6]  (UF #21; Dkt. 42-29.)

After multiple communications between the City Attorney's Office and Ms. Cazzell, the City Attorney's Office sent Plaintiff's counsel an email stating, "we are in the process of placing on the agenda for the upcoming City Council meeting on November 9, 2021, the [OPD's] recommendation not to award a Towing and Storage Services Agreement to Alberto's Towing …."  (UF #26; Dkt. 42-31.)  Ms. Cazzell responded in relevant part, "Any such hearing must involve ALL of the RFP contestants, not just my client.  It would need to be a 'do-over,' not just some sort of 'reconsideration' of why my client's RFP application was denied and the others' weren't."  (UF #30; Dkt. 42-32.)  The City Attorney's Office responded, explaining that the City would not agree to a "do over" for the following reasons:

> According to the Request for Proposal 20-21.39, the City can "award its total requirements to one Responder or to apportion those requirements among two or more Responders as the City may deem to be in its best interest."  (Page 6, Para 17).  There is no limitation on

---

[6] The demand letter accused the City of awarding the contracts in late May 2021 without any public vote, in violation of the Brown Act.  This same allegation appears in the verified FAP/C.  (Dkt. 1-6 ¶¶ 11-12.)  Later, however, Mr. Castellanos "realized that he had not heard from his prior dispatcher that the other applicants had already been awarded a franchise *prior* to the June 8th hearing, but rather *between*" June 8 and June 11.  (Dkt. 44 at 22, citing Dkt. 44-2 ¶ 17 (emphasis added).)  Based on Mr. Castellanos's declaration, the Court understands that Plaintiff has abandoned this allegation.

the number of Responders that can be awarded contracts with the City; therefore the Responders are not competing for a limited number of contracts.[7]

(UF #31; Dkt. 42-33.)

On November 3, 2021, the Agenda Item 9.1 Report, which set forth a recommendation by OPD to the City Council not to award a contract to Alberto's Towing, was made available to the public and provided to Plaintiff's counsel. (UF #32; Dkt. 42-35.) Both Ms. Cazzell and Mr. Castellanos attended the November 9 City Council meeting and spoke. (UF #35.) Their comments did not cause the City Council to vote in favor of awarding a contract to Alberto's Towing. (Id.)

Plaintiff has not had a tow yard in the City since September 2022, when it vacated its subleased location on Batavia Street. (UF #36.)

## V.

## DISCUSSION

### A. Writ of Administrative Mandate.

#### 1. Summary of the Parties' Claims.

Plaintiff seeks a "WRIT OF ADMINISTRATIVE MANDATE, directing that it be awarded a Contract under the ORANGE Towing and Storage Services

---

[7] Plaintiff contends that the applicants were competing for a limited number of contracts. Plaintiff argues, "If not, why did … Southside Towing appear at the [November 9] hearing and argue against Alberto's Towing" being awarded a contract? (Dkt. 44-1 at 19-20.) Plaintiff cites a transcript of the November 9 City Council meeting where Mr. Hassan, the owner of Southside Towing, appeared and spoke. (Dkt. 42-36 at 11.) Mr. Hassan told the City Council several reasons why he believed that the City should not award Alberto's Towing a contract, including issues with the length of its sublease, the unavailability of interior storage, and the unavailability of sufficient exterior storage. (Id.) The Court does not accept Mr. Hassan's testimony as undisputed, but the Court accepts that the transcript accurately reflects what he told the City Council on November 9. His statements evidence his preference that the City not award a fourth towing contract. His statements do not evidence that the City lacked discretion to do so.

RFP." (FAP/C ¶ 19.)  Plaintiff contends that the "RFP process was not 'fair.'" (Id. Prayer ¶ 1.)  As the specific basis for writ relief, Plaintiff alleges that the City:

- "proceeded without, or in excess of, jurisdiction";
- "did not conduct or allow for, or preside over, a fair trial";
- "did not fairly evaluate nor review" Plaintiff's RFP response "and did not score it accurately with respect to the actual facts and evidence," instead king "errors in judgment" including "adding in extra requirements never a part of the RFP";
- "prejudicially abused their discretion"; and
- "violated the rights, privileges, and immunities guaranteed to Alberto's Towing under the United States Constitution."

(FAP/C ¶¶ 15-18.)

Defendants contend that Plaintiff's claim for administrative mandamus fails "as a matter of law because the decision to award a towing agreement is not a quasi-judicial decision subject to review under this provision." (Dkt. 42 at 6.) Plaintiff's opposition brief does not discuss administrative mandamus. (Dkt. 44.) Plaintiff's "conclusions of law" has one paragraph about administrative mandamus, but it fails to explain how the doctrine applies in this case. (Dkt. 44-1 at 24 ¶ 3.)

**2. Relevant Law.**

Defendants' motion explains the relevant law, as follows:

An administrative writ of mandate cause of action is based on [California] Code of Civil Procedure section 1094.5.  A petition for administrative mandamus is appropriate when the party seeks review of a determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency for the purpose of

making an adjudicatory or quasi-judicial decision.  <u>Western States Petroleum Assn. v. Superior Court</u>, 9 Cal. 4th 559, 566 (1995).  For example, a quasi-judicial decision pursuant to Section 1094.5 is defined as suspending, demoting, or dismissing an officer or employee, revoking, denying an application for a permit, license, or other entitlement, imposing a civil or administrative penalty, fine, charge, or cost, or denying an application for any retirement benefit or allowance.  Code Civ. Pro. § 1094.6(e).

(Dkt. 42 at 18.)

Typically, the "adjudicatory functions regulated by administrative mandamus … involve a fact-finding process, followed by a decision which imposes a tax upon an individual, a disciplinary burden, suspension of employment, revocation of license or credential, or denial to him of a permit or license which is a necessary prerequisite for the individual to engage in certain activities."  <u>Royal Convalescent Hospital, Inc. v. State Board of Control</u>, 99 Cal. App. 3d 788, 794 (1979).  In contrast, "administrative mandamus is not available to review quasi-legislative actions" of local government entities.  <u>Pacific Legal Foundation v. California Coastal Com.</u>, 33 Cal. 3d 158, 168 (1982).  Generally, a local legislature's decision to award or withhold a contract is "legislative in character."  <u>Joint Council of Interns & Residents v. Bd. of Supervisors</u>, 210 Cal. App. 3d 1202, 1211 (1989).  "This is so because the letting of contracts by a governmental entity necessarily requires an exercise of discretion guided by considerations of the public welfare."[8]  <u>Id.</u>

### 3.  Analysis.

Plaintiff advances no evidence or legal argument that the City Council's votes on June 8 and November 9, 2021, were quasi-judicial in nature, as opposed

---

[8] Plaintiff cites this case in its Brown Act argument.  (Dkt. 44 at 11.)

to legislative.  Similarly, there is no evidence that the City's scoring of the RFP responses was quasi-judicial.  Since Plaintiff is not challenging quasi-judicial governmental action, Defendants are entitled to summary judgment on Plaintiff's claim for administrative mandamus.

**B. <u>Traditional Writ of Mandate.</u>**

**1. Summary of the Parties' Claims.**

Plaintiff alleges that Defendants "considered, evaluated, and voted upon the subject RFP Proposals in an unreasonable, arbitrary, and capricious manner, and in violation of [California Code of Civil Procedure] sections 1085 through 1088 …." (FAP/C ¶ 26.)  Plaintiff seeks a "Traditional Writ of Mandate" directing Defendants to award it a towing contract with the OPD.  (<u>Id.</u> ¶ 28.)

Defendants contend that Plaintiff's claim for traditional mandamus fails because a writ of mandate can only compel a public official to perform a *ministerial* duty, but the decision whether to award a contract is *discretionary*.  (Dkt. 42 at 19.)  To the extent a writ could issue to compel Defendants to re-score the RFPs and re-vote, Defendants contend "there is no evidence to support that the City's decision to deny the towing agreement was arbitrary or capricious or otherwise unlawful."  (<u>Id.</u> at 6.)  Defendants further contend that any request for mandamus relief is moot because Plaintiff no longer operates a tow yard in Orange.  (<u>Id.</u> at 26.)

Plaintiff's opposition brief does not discuss the ministerial/discretionary distinction or the "arbitrary or capricious" standard.  (Dkt. 44.)  Plaintiff mentions these legal concepts in its "conclusions of law" but again does not explain how they apply.  (Dkt. 44-1 at 25 ¶¶ 5-7.)  In its briefing, Plaintiff suggests that its request to compel the City to award it a towing contract is not moot because it might someday resume operations in Orange at a different location.  (Dkt. 44 at 17 (Plaintiff "is actively seeking to move back into Orange and a viable property may have come up.").)  At the hearing, however, Plaintiff's counsel conceded that

10

Plaintiff's request for mandamus relief was moot.

### 2. Relevant Law.

A public entity's "award of a contract, and all of the acts leading up to the award, are legislative in character." <u>Mike Moore's 24-Hour Towing v. City of San Diego</u>, 45 Cal. App. 4th 1294, 1303 (1996). Judicial review of a local entity's legislative determination is through ordinary mandamus under California Code of Civil Procedure section 1085.[9] <u>Id.</u> Such review is limited to an inquiry into whether the action was "arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair." <u>Bull Field, LLC v. Merced Irrigation Dist.</u>, 85 Cal. App. 5th 442, 462 (2022) (citing <u>Fullerton Joint Union High Sch. Dist. v. State Bd. of Educ.</u>, 32 Cal. 3d 779, 786 (1982) (plur. opn.)). Under this standard, a "reviewing court may issue a writ of mandate that requires legislative or executive action to conform to the law, but it may not substitute its discretion for that of legislative or executive bodies in matters committed to the discretion of those branches." <u>Id.</u> (citations omitted).

When a petitioner seeks mandamus to *compel* municipal action (as opposed to merely *invalidating* municipal action), the petitioner must show three things: (1) "there is no other plain, speedy, and adequate remedy"; (2) the respondent "has a clear, present, and ministerial duty to act in a particular way"; and (3) "the petitioner has a clear, present and beneficial right to performance of that duty." <u>City of San Diego v. State of California</u>, 164 Cal. App. 4th 580, 593 (2008) (citations omitted). A "ministerial duty" is one that must "be performed in a

---

[9] A writ of mandate "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station …." Cal. Code Civ. Pro. § 1085. A writ of mandate "will issue against a county, city or other public body …." <u>Venice Town Council, Inc. v. City of Los Angeles</u>, 47 Cal. App. 4th 1547, 1558 (1996).

prescribed manner under the mandate of legal authority without the exercise of discretion or judgment." Id.; see, e.g., In re Dohner, 79 Cal. App. 5th 590, 599 (2022) (dismissing mandamus claim to compel prison officials to let inmates have televisions because no constitutional or statutory provisions imposed such a duty); Michael Leslie Productions, Inc. v. City of Los Angeles, 207 Cal. App. 4th 1011, 1019 (2012) (dismissing mandamus claim by bidder for a municipal golfcart concession because the city council's decision to self-operate the concession was discretionary).

When a petitioner merely seeks to invalidate municipal action, the threshold for obtaining mandamus relief is still high. "Mandamus may issue to correct the exercise of discretionary legislative power, *but only if* the action taken is so palpably unreasonable and arbitrary as to show an abuse of discretion as a matter of law. This is a highly deferential test." Carrancho v. California Air Resources Board, 111 Cal. App. 4th 1255, 1265 (2003).

**3.  Analysis.**

a.  Compelling the City to Award a Towing Contract.

Plaintiff seeks to compel the City to award it a towing contract. (FAP/C ¶ 28.) Plaintiff has not demonstrated that Defendants have a ministerial duty to award it a towing contract, even if it had scored well during the RFP evaluation process. Plaintiff's request for this form of mandamus relief fails.

b.  Compelling the City to Re-Vote Based on the Existing Scores.

Plaintiff may seek to vacate the June 8 and September 9 votes so that the City must re-vote on all the RFP responses.[10] Even if the FAP/C can be liberally construed to include this mandamus claim, it fails.

First, Plaintiff no longer has a beneficial interest in a re-vote. In 2021,

---

[10] Plaintiff alleges that the City Council "voted upon the subject RFP Proposals in an unreasonable, arbitrary, and capricious manner." (FAP/C ¶ 26.)

Plaintiff subleased the tow yard at 593 N. Batavia Street that Sgt. Cullen inspected to score Plaintiff's RFP response, but that sublease has since ended.  (Dkt. 44-2 ¶¶ 18-19.)  Plaintiff "is currently leasing a large lot in Fullerton" and "hopes to move its operations back to the City of Orange" someday at a location yet-to-be-determined.  (Id. ¶ 20.)  Having the City Council reconsider whether to award Plaintiff a towing contract based on *old* scores for the security, storage capacity, and other conditions of Plaintiff's *old* property would be pointless.

Second, undisputed facts show that Sgt. Cullen recommended to the City Council in advance of the June 8 vote, "Alberto's Towing did not meet the minimum requirements" to obtain a contract.  (Dkt. 42-22 at 1 ¶ 2.)  Similarly, in advance of the September 9 vote, the OPD Chief recommended against awarding Plaintiff a towing contract.  (Dkt. 42-35.)  Having received such recommendations, the Individual Defendants' votes were not so "unreasonable and arbitrary as to show an abuse of discretion as a matter of law."  Indeed, Mr. Castellanos declares that Plaintiff was "marked down for not having 3 strands of barbed wire, which could have been cured in an hour."  (Dkt. 44-2 ¶ 13.)  He also declares that Plaintiff had tow trucks that needed to be certified by the California Highway Patrol but were not certified for reasons beyond his control.  (Dkt. 44-2 ¶ 5.)  Plaintiff argues that it "should have been given a little more grace on completing the truck certifications."  (Dkt. 44 at 9.)  A writ of mandate will not issue to compel a public agency to act more graciously.

### c.  Compelling the City to Re-Score and Re-Vote.

Finally, to the extent Plaintiff seeks to compel the City to re-score all the RFP responses and then re-vote because the City allegedly "considered" and "evaluated" the responses in an arbitrary and capricious manner (FAP/C ¶ 26), this claim, too, fails.  As discussed above, Plaintiff no longer operates from the tow yard described in its RFP proposal.  (UF #36.)  This undisputed fact deprives Plaintiff of a beneficial interest in the City's re-scoring the RFP proposals.

**C. The Brown Act.**

    **1. Relevant Law.**

California's Brown Act requires that local government agencies post advanced notice of their regular meeting agendas, as follows:

> At least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session.  A brief general description of an item generally need not exceed 20 words.

Cal. Govt. Code § 54954.2(a)(1).  "The agenda … shall be posted in a location that is freely accessible to members of the public and on the local agency's Internet Web site, if the local agency has one."  Id.

Any "interested person may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency" violated the Brown Act.  Id. § 54960.1(a). If a court determines that the challenged legislative action violated the Brown Act, then the legislative act is "null and void" unless certain exceptions apply.  Id. § 54960.1(d).  Those exceptions include where the action was in "substantial compliance" and where the action gave rise to a contractual obligation "upon which a party has, in good faith and without notice of a challenge to the validity of the action, detrimentally relied."  Id.

Before filing a Brown Act lawsuit, the interested person must demand that the local agency cure or correct the allegedly unlawful legislative action.  Id. § 54960.1(b).  Upon a finding that the alleged violation was "cured or corrected by a subsequent action of the legislative body," the lawsuit must "be dismissed with prejudice."  Id. § 54960.1(e).

14

### 2. Analysis of Alleged Brown Act Violations.

Plaintiff advances several theories of how Defendants violated the Brown Act. The Court addresses each in turn.

#### a. The June 8 City Council Vote.

First, Plaintiff alleged that Defendants awarded towing contracts to the three incumbent companies *before* the June 8 vote. (FAP/C ¶¶ 11-12.) As discussed in footnote 6, Plaintiff no longer alleges this.

Second, Plaintiff complains that he did not receive *actual* notice that the City Council would vote on the RFP responses on June 8. (Dkt. 44 at 12 ("That Alberto's Towing did not receive actual notice of the City's June 8, 2021 hearing … is self-apparent from the fact that [it] did not appear at the hearing …").) The Brown Act does not require public entities to give individual or actual notice, even to interested parties. Plaintiff has not cited any provision of the Brown Act that Defendants purportedly violated by failing to give it individual or actual notice.

Third, Plaintiff points to a statement by the City Attorney at the November 9 City Council meeting, arguing as follows:

> In this case, THE CITY made a cast-iron admission that THE CITY had violated the Brown Act as to the giving of notice of the June 8, 2021 hearing, in the form of the clear, uncontradicted testimony of THE CITY ATTORNEY himself [who said,] "Due to an oversight in the purchasing and procurement process none of the prospective contractors were notified that the city council would consider their agreement at the June 8th meeting. As such, those seeking a contract with the City did not have the opportunity to address the city council prior in awarding the agreement."

(Dkt. 44 at 12-13 (citing transcript, Dkt. 42-36 at 2).) The City Attorney's statement merely acknowledged that Plaintiff did not receive actual notice of the June 8 meeting. It does not admit a Brown Act violation.

15

Fourth, Plaintiff contends that the RFP advised responders that "the award of the towing contracts would be made on July 1, 2021," suggesting that the City lacked discretion to consider the RFP proposals on a different date. (Dkt. 44 at 8.) In fact, the RFP sets forth a tentative schedule, as follows:

> The City reserves the right to make changes to the below schedule, but generally plans to adhere to the implementation of this bid process as follows:
>
> | | |
> |---|---|
> | RFP released: | Date: Thurs. 03/04/2021 |
> | Deadline for receiving questions: | Date: Thurs. 03/18/2021 5:00 pm P.T. |
> | Response to questions: | Date: Thurs. 03/25/2021 5:00 pm P.T. |
> | Proposals due: | Date: Thurs. 04/01/2021 2:00 pm P.T. |
> | Consultant selected: | Date: TBD |
> | Contract approved by City Council | Date: Thurs. 07/01/2021 (if required) |

(Dkt. 42-12 at 4.) The RFP also says, "It is the responsibility of the interested parties … to check the website frequently to look for any additional updates." (Id. at 2.) The City did not bind itself to vote on the RFP responses only on July 1. And even if the City failed to follow the RFP's schedule, that would not violate the Brown Act.

Fifth, Plaintiff argues that the Agenda was not posted in compliance with the Brown Act. (Dkt. 44 at 15 ("Declarant JENNIFER CONNALLY said that she posted the paperwork on website BUT NOT ON OTHER SPOTS—thus not compliant with Brown Act.").) Ms. Connally declares that she is a Deputy City Clerk and the City Clerk's Office posted the Agenda on the City's website, along with the Agenda Packet.[11] (Dkt. 42-6 ¶ 2.) She further declares, "The City Clerk's Office also makes available on its front counter a copy of the Agenda and the full Agenda Packet for the public to review." (Id.) Additionally, the "City Clerk's Office also physically posts the Agenda face sheet in front of City Hall, at the City's Main Library, and at the City's Police Department …." (Id.)

---

[11] She also identifies it as the Agenda "which I posted." (Dkt. 42-6 ¶ 2.) Any objections that Ms. Connally lacks personal knowledge to describe how the Agenda was posted are OVERRULED.

Again, the Brown Act requires that the Agenda be posted on the City's website *and* "a location that is freely accessible to members of the public."  Cal. Govt. Code § 54954.2(a)(1).  There is no evidence that posting the Agenda at the front counter of the City Clerk's Office does not meet the requirement of posting the Agenda in a freely accessible, public location.

Sixth, Plaintiff contends that the City cannot rely on the posting of the Agenda's face sheet to demonstrate Brown Act compliance.  (Dkt. 44 at 15 ("a 'posting' of only the face sheet of the AGENDA wouldn't have helped at all, since it said absolutely nothing about the relevant hearings" at Agenda Item 3.14).)  But the City is not relying on the face-sheet postings described by Ms. Connally to demonstrate Brown Act compliance.  Ms. Connally's declaration demonstrates the required posting by establishing that the City posted the entire Agenda on its website *and* at the City Clerk's Office's front counter.  (Dkt. 42-6 ¶ 2.)

Seventh, Plaintiff argues that the Agenda did not sufficiently describe the anticipated City Council action.  The Agenda describes Item 3.14, as follows:

> Agreement with Truxyz Inc., doing business as Tows R Russ; Archie's Towing; and Southside Towing for Towing and Storage Services.
> **Recommended Action:**
> 1. Approve the agreement with Tows R Russ, Archie's Towing, and Southside Towing and authorize the Mayor and City Clerk to execute on behalf of the City.
> 2. Approve Fee Schedule for Contracted Tow Companies, effective July 1, 2021.

(Dkt. 42-25 at 7.)  Plaintiff argues that the City violated the Brown Act because "the June 8, 2021 hearings only addressed the 'Recommended' RFP awards to the INCUMBENTS; while not even mentioning ALBERTO'S TOWING at all (meaning, its RFP was not even considered)."[12]  (Dkt. 44 at 13.)

---

[12] The Agenda Packet mentions Alberto's Towing.  (Dkt. 42-22 at 1-2.)  But neither party cites any authority that courts can consider the agenda packet when

1    Substantial compliance under the Brown Act "means actual compliance *in*

2    *respect to the substance essential to every reasonable objective of the statute*."

3    San Diegans for Open Government v. City of Oceanside, 4 Cal. App. 5th 637, 643

4    (2016).  To fulfill the Brown Act's objective, "agenda drafters must give the public

5    a fair chance to participate in matters of particular or general concern by providing

6    the public with more than mere clues from which they must then guess or surmise

7    the essential nature of the business to be considered by a local agency."  Compare

8    id. (holding agenda language that provided a "brief general description of a hotel

9    project that disclosed the payment of a subsidy to the developer," without

10   disclosing the amount and duration of the subsidy, satisfied the Brown Act); with

11   Moreno v. City of King, 127 Cal. App. 4th 17, 26 (2005) (holding that closed

12   session agenda item stating "Public Employee (employment contract)" provided

13   insufficient notice that the city would discuss an employee's potential dismissal).

14   Per the statutory text and above-cited authorities, the Brown Act requires

15   that an agenda provide notice of "each item of business to be transacted or

16   discussed."  Cal. Govt. Code § 54954.2(a)(1).  The Agenda here gave notice that

17   the City Council would consider and vote on a recommendation to award towing

18   contracts to three responders, none of which were Alberto's Towing.  (Dkt. 42-25

19   at 7.)  Reasonable people reading Agenda Item 3.14 would have understood that

20   they could appear at the June 8 meeting to speak in favor of Alberto's Towing or

21   against the other applicants.  As a matter of law, the Agenda language satisfies the

22   Brown Act's requirement of a "brief general description" of the business under

23   consideration and on which the City Council planned to vote.

24   For all these reasons, Plaintiff's Brown Act claim based on the June 8 City

25   Council vote fails.

26

27   _____

28   evaluating whether an agenda satisfies the Brown Act.

b.     The November 9 City Council Vote.

Plaintiff contends that the November 9 vote did not "cure" the Brown Act violation that allegedly invalidated the June 8 vote.  (FAP/C ¶ 31; Dkt. 44 at 15.) But since no Brown Act violation invalidated the June 8 vote (as discussed above), this contention is irrelevant.

Plaintiff also contends that the City followed unfair procedures at the November 9 meeting.  (Dkt. 44 at 15-16.)  Plaintiff fails to tie these allegations to the Brown Act.  Plaintiff fails to provide evidence of (or even allege) legally deficient notice of the November 9 City Council meeting.  Thus, Plaintiff's Brown Act claim based on the November 9 City Council vote also fails.

**D. <u>Section 1983.</u>**

**1.  Summary of Plaintiff's Claims.**

Plaintiff alleges that Defendants caused "Alberto's Towing and its principal,[13] citizens of the United States … to be deprived of the rights, privileges, or immunities secured by the U.S. Constitution, the California Constitution, and other laws …."[14] (FAP/C ¶ 37.)  Plaintiff alleges that Defendants deprived it of its federal constitutional rights to procedural due process, substantive due process, and equal protection.  (<u>Id.</u> ¶ 18.)  Plaintiff seeks both monetary damages and declaratory relief in the form of a declaration that Defendants violated Plaintiff's constitutional rights.  (FAP/C ¶ 33; Prayer ¶¶ 3-4.)

---

[13] Professional Towing, LLC is the only named plaintiff.  In some circumstances, a limited liability company can litigate on behalf of its members. The FAP/C, however, does not assert any § 1983 claims alleging infringement of Mr. Castellanos's rights, separate and distinct from Plaintiff's rights.

[14] Section 1983 claims cannot be based on the California Constitution. <u>Wasson v. Sonoma County Junior College Dist.</u>, 4 F. Supp. 2d 893, 904.  The FAP/C does not identify any "other" federal laws as the basis for Plaintiff's § 1983 claims beyond the due process and equal protection claims discussed herein.

1

2.  **Procedural Due Process.**

2       Plaintiff's procedural due process claim is based on an alleged lack of

3  "notice and an opportunity to be heard" at the June 8, 2021 City Council meeting.

4  (FAP/C ¶ 18; Dkt. 44 at 16 (referring to "a right of every applicant to be heard").)

5              a.  Relevant Law.

6       "Every person who, under color of any statute, ordinance, regulation,

7  custom, or usage, of any State or Territory or the District of Columbia, subjects, or

8  causes to be subjected, any citizen of the United States …to the deprivation of any

9  rights, privileges, or immunities secured by the Constitution and laws, shall be

10 liable to the party injured."  42 U.S.C. § 1983.  A § 1983 plaintiff must establish

11 that the defendant was the "proximate cause" of the alleged constitutional

12 violation.  Mendez v. Cty. of L.A., 897 F.3d 1067, 1076 (9th Cir. 2018).

13      "A procedural due process claim has two distinct elements: (1) a deprivation

14 of a constitutionally protected liberty or property interest, and (2) a denial of

15 adequate procedural protections."  Brewster v. Bd. of Educ., 149 F.3d 971, 982

16 (9th Cir.1998).  For the first element, a constitutionally protected property interest

17 is one to which the plaintiff is entitled, described as follows:

18          In some instances, a person can have a constitutionally protected

19          property interest in a government benefit, such as a license or permit

20          …. To have a property interest in a government benefit, a person

21          clearly must have more than an abstract need or desire for [the

22          benefit].  He must have more than a unilateral expectation of it.  He

23          must, instead have a legitimate claim of *entitlement* to it ….

24          Furthermore, a property interest must stem from an independent

25          source such as state law—rules or understandings that secure certain

26          benefits and that support claims of entitlement to those benefits.

27          Along the same lines, we have held that state law creates a legitimate

28          claim of *entitlement* when it imposes significant limitations on the

1   discretion of the decision maker.  For example, we have held that

2   such an entitlement to a government permit exists when a state law or

3   regulation requires that the permit be issued once certain

4   requirements are satisfied.

5   Gerhart v. Lake County Mont., 637 F.3d 1013, 1019 (9th Cir. 2010) (citations

6   omitted); see also Santa Clara v. Andrus, 572 F.2d 660, 676 (9th Cir.) ("[A] statute

7   will create an entitlement to a governmental benefit either if the statute sets out

8   conditions under which the benefit *must* be granted or if the statute sets out the

9   *only* conditions under which the benefit may be denied.") (citations omitted), cert.

10  denied, 439 U.S. 859 (1978).

11          For the second element, three factors inform what process is due, as follows:

12          First, the private interest that will be affected by the official action;

13          second, the risk of an erroneous deprivation of such interest through

14          the procedures used, and the probable value, if any, of additional or

15          substitute procedural safeguards; and finally, the Government's

16          interest, including the function involved and the fiscal and

17          administrative burdens that the additional or substitute procedural

18          requirement would entail.

19  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Importantly, "When the action

20  complained of is legislative in nature, due process is satisfied when the legislative

21  body performs its responsibilities in the normal manner prescribed by law."  Hotel

22  & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 969 (9th Cir. 2003),

23  cert. denied 542 U.S. 904 (2004).

24          b.  Analysis—No Constitutionally Protected Property Right.

25          Defendants argue, "Plaintiff does not have a property interest in the City's

26  towing agreement as no contract award was made to him by the City Council.

27  Plaintiff cannot establish a property interest in an agreement which the City had the

28  discretion to grant or deny."  (Dkt. 42 at 30.)  Plaintiff counters that it has a

constitutionally protected property interest but conflates that concept with "standing" and the "beneficial interest" needed to pursue a writ of mandamus. (Dkt. 44 at 16-17.)

The undisputed terms of the RFP establish that the City had discretion to award more than one towing contract and was not legally compelled to award a contract to any particular responder based on its score. (Dkt. 42-12 ¶¶ 16-17.) The City retained discretion to modify the RFP and negotiate any final agreement. (Id.) Applying the above-cited law, Plaintiff has not pointed to any evidence that it had a constitutionally protected property interest in a City towing contract.

In a bit of a plot twist, Plaintiff contends that it had a "vested property right" in a towing contract with the Orange County Sheriff and that "the City's actions" caused Plaintiff to lose that contract." (Dkt. 44 at 17; FAP/C ¶¶ 23, 38 (alleging on information and belief that one or more Individual Defendants falsely told an unknown County employee that Mr. Castellanos "had been convicted of a crime of violence").) As discussed at the hearing, these allegations do not save Plaintiff's procedural due process claims because Defendants' actions allegedly in violation of Plaintiff's procedural due process rights (i.e., not providing actual notice of the June 8 City Council meeting) are not the same actions that allegedly caused Plaintiff to lose the County contract.

More fundamentally, Plaintiff has not provided any evidence in support of these allegations. The assertion in Plaintiff's opposition brief cites no evidence. (Dkt. 44 at 17.) In Plaintiff's response to Defendants' UFs and statement of genuine issues (Dkt. 44-1), Plaintiff says nothing about losing the County towing contract. Defendants moved for summary judgment asserting that Plaintiff lacked the kind of property interest necessary to bring a due process claim. (Dkt. 42 at 30 ("Absent an actual property interest, Plaintiff cannot establish a violation of his due process rights.").) Plaintiff cannot rely on bare allegations without evidence to defeat summary judgment. Celotex, 477 U.S. at 322.

c.  Analysis—No Additional Process Due.

Plaintiff contends that the City failed to "properly notice him" about the June 8 City Council meeting and that he had a constitutional right to be present and be heard.  (Dkt. 44 at 6 n.3, 16.)  Plaintiff fails to cite any legal authority for the premise that a person with a financial interest in business before a city council has a constitutional right to actual notice of any planned vote, even if the financial interest is not a constitutionally protected property interest.

Additionally, a defendant is liable under § 1983 "only upon a showing of personal participation by the defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  The Individual Defendants are legislators, not administrators.  There is no evidence that they were responsible for providing notice to the towing companies that responded to the RFP.  There is no evidence that their actions caused other City staff not to provide individual or actual notice. Thus, Plaintiff's procedural due process claims against the Individual Defendants also fail for lack of evidence of personal participation and causation.

### 3.  Substantive Due Process.

a.  Summary of Plaintiff's Claims.

Plaintiff's substantive due process claim is based on Sgt. Cullen's allegedly erroneous scoring of the RFP responses and the City Council's consideration of "extra requirements" described in his staff report when they voted on June 8, 2021. Plaintiff alleges that Defendants "unfairly evaluated the RFP Proposals of the THREE INCUMBENTS in comparison to that of ALBERTO'S TOWING, and made many mistakes, and errors in judgment, including without limitation those of 'adding in' extra requirements never a part of the RFP…."  (FAP/C ¶ 16.)  Plaintiff alleges that Defendants "violated the U.S. Constitution … by means of the wrongful and procedurally-unauthorized RFP Proposal evaluation and award process, including … substantive due process."  (Id. ¶ 30.)

Plaintiff also alleges that the staff report circulated before the November 9

1   meeting falsely claimed that Mr. Castellanos had been "arrested for assault and

2   battery" and presented that information in a "misleading" fashion to the City

3   Council, creating a "false impression" that influenced the vote.  (Id. ¶ 23.)  The

4   staff report says, "On March 6, 2021, [OPD] officers responded to Alberto's

5   Towing regarding a 'keep the peace' call.  During the call, and while officers were

6   standing nearby, Alberto (the owner) apparently assaulted a male causing him to

7   fall to the ground."[15]  (Dkt. 42-35.)

8           b.  Relevant Law.

9       Substantive due process addresses improper governmental interference with

10  property rights and irrational actions by government decision makers.  County of

11  Sacramento v. Lewis, 523 U.S. 833, 845 (1998).  To establish a violation of

12  substantive due process in this context, Plaintiff must show that the challenged

13  government action (1) deprived it of a constitutionally protected property interest

14  and (2) was "clearly arbitrary and unreasonable, having no substantial relation to

15  the public health, safety, morals, or general welfare."  Stamas v. County of

16  Madera, 795 F. Supp. 2d 1047, 1071 (citing Euclid v. Ambler Realty Co., 272 U.S.

17  365, 395 (1926)).

18          c.  Analysis.

19      For the same reasons discussed above, Plaintiff has not set forth any

20  evidence that it had a constitutionally protected property interest in the potential

21  award of a City towing contract.  The Court grants summary judgment for

22  Defendants without reaching the question of whether undisputed facts show that

23  Sgt. Cullen's scores and the City Councilmembers' votes were not "clearly

24  arbitrary and unreasonable."

25

26

27      [15] The Court accepts this as the report's undisputed content, recognizing that
    Plaintiff disputes this account's accuracy.
28

24

1           **4. Equal Protection.**

2                a.  Summary of Plaintiff's Claims and Relevant Law.

3         Plaintiff's equal protection claim alleges that the City treated Alberto's

4  Towing differently from the other, similarly situated applicants.  (Dkt. 44 at 17

5  (arguing that the City "treat[ed] ALBERTO'S TOWING unfairly and not on an

6  equal footing with the INCUMBENTS").)  The two alleged forms of disparate

7  treatment are how (1) Sgt. Cullen scored the RFP responses; and (2) the Individual

8  Defendants voted.

9         Since Plaintiff's claim involves neither a suspect classification nor a

10  fundamental right, only disparate governmental treatment that bears "no rational

11  relationship to a legitimate governmental purpose" can offend the Equal Protection

12  Clause.  Parks v. Watson, 716 F.2d 646, 654 (9th Cir. 1983) (citing San Antonio

13  Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 40 (1973)).

14                b.  Voting Claims.

15         Plaintiff cannot show that the Individual Defendants' votes had no rational

16  relationship to a legitimate governmental purpose.  Undisputed evidence

17  establishes that staff reports had informed them that Plaintiff was unqualified and

18  had scored poorly during the evaluation process.

19                c.  Scoring Claims.

20         Sgt. Cullen scored the RFP responses.  (UF ##9, 10.)  Sgt. Cullen is not a

21  defendant.  Plaintiff's § 1983 scoring-related claims against the Individual

22  Defendants fail for lack of evidence of their personal participation in the scoring.

23         For Plaintiff's equal protection claim against the City based on Sgt. Cullen's

24  actions to survive summary judgment, Plaintiff must point to evidence supporting

25  Monell liability.  (Dkt. 42 at 31 (arguing that Plaintiff's § 1983 claims against the

26  City fail for lack of evidence of Monell liability).)  A "local government may not

27  be sued under § 1983 for an injury inflicted solely by its employees or agents.

28  Instead, it is when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978).  Under Monell, "municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to [1] an expressly adopted official policy, [2] a long-standing practice or custom, or [3] the decision of a final policymaker." Ellins v. City of Sierra Madre, 710 F.3d 1049, 1066 (9th Cir. 2013).  Generally, the city manager or city council act as a city's final policymakers.  Id. (holding a city not liable for its police chief's retaliatory acts without evidence the city manager knew the chief's unlawful motives and ratified his acts).  The policy, practice, or custom must be the "moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

Here, there are no allegations (let alone evidence) that Sgt. Cullen disparately scored the RFP responses because he was following some City policy, practice, or custom.  It would be illogical to allege that the Sgt. Cullen scored the RFP responses following a uniform policy but treated one responder differently. See Akshar Global Invs. Corp. v. City of L.A., 2019 U.S. Dist. LEXIS 65291 at *14 (noting the incongruity of trying to pursue Monell liability for an equal protection claim alleging discrimination against a class of one), affirmed in pertinent part by, reversed on other grounds by, remanded by Akshar Global Invs. Corp. v. City of L.A., 817 F. App'x. 301, 305.  There is also no evidence that Sgt. Cullen was a final policymaker or that his scoring decisions were investigated and ratified by the City Council.

Because there is no evidence to support Monell liability, Plaintiff's scoring-related equal protection claim against the City fails.

### 5. Qualified Immunity.

The Individual Defendants moved for summary judgment on the basis that they are entitled to qualified immunity from § 1983 liability.  (Dkt. 42 at 31.)  They

1  argue, "The actions of the City Council in approving the recommendations of the

2  [OPD] regarding Alberto's Towing were discretionary and there is no evidence

3  that their actions violated Alberto's Towing constitutional rights, which were so

4  clearly established that a reasonable person would have known them." (Id. at 32.)

5          To determine whether a government official is entitled to qualified

6  immunity, courts must consider: (1) whether the official's conduct violated a

7  constitutional right and, if so, (2) whether the right was clearly established at the

8  time. Saucier v. Katz, 533 U.S. 194, 201 (2001). To be clearly established, a right

9  "must have a sufficiently clear foundation in then-existing precedent." District of

10  Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (internal citations and quotation

11  marks omitted). If it is merely "suggested" by precedent, it is not clearly

12  established. Id. at 590. Rather, "[t]he precedent must be clear enough that every

13  reasonable official would interpret it to establish the particular rule the plaintiff

14  seeks to apply. Otherwise, the rule is not one that every reasonable official would

15  know." Id. (internal citations and quotation marks omitted). A case "directly on

16  point" is not required, "but existing precedent must have placed the statutory or

17  constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741

18  (2011); see also DePaul Indus. v. Miller, 14 F.4th 1021, 1027 (9th Cir. 2021)

19  (holding qualified immunity barred § 1983 liability for due process claims unless

20  the plaintiff's constitutionally protected property interest was clearly established).

21  "It is the plaintiff who bears the burden of showing that the rights allegedly

22  violated were clearly established." Shafer v. Cty. of Santa Barbara, 868 F.3d 1110,

23  1118 (9th Cir. 2017) (citations omitted).

24          In response to Defendants' motion, Plaintiff's "conclusions of law" sets

25  forth the doctrine of qualified immunity. (Dkt. 44-1 at 29 ¶¶ 23-25.) Plaintiff's

26  opposition brief, however, makes no arguments as to why the Individual

27  Defendants are not entitled to qualified immunity. Plaintiff identifies no cases that

28  purportedly show its rights were clearly established. Because Plaintiff failed to

meet its burden, the Individual Defendants are entitled to qualified immunity for all Plaintiff's § 1983 claims.

Alternatively, as discussed above, Plaintiff did not have a constitutionally protected property right in the potential award of a City towing contract.  Since this right was not clearly established when the Individual Defendants voted on the RFP responses, they have qualified immunity for Plaintiff's due process claims.

### 6. Declaratory Relief.

#### a. Relevant Law.

The Declaratory Judgment Act ("DJA") allows a district court to "declare the rights and other legal relations of any party seeking such declaration, whether or not further relief is or could be sought," but only "[i]n a case of actual controversy."  28 U.S.C. § 2201(a).  Under the DJA, the Ninth Circuit applies a two-part test to determine whether jurisdiction over a claim for a declaratory relief is appropriate.  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).  The court must first determine if an actual case or controversy exists within its jurisdiction.  If so, the court must then decide whether to exercise its equitable jurisdiction.  Id.

Courts may dismiss DJA claims involving past actions when those claims are duplicative of other causes of action.  Teaupa v. U.S. Nat'l Bank N.A., 836 F. Supp. 2d 1083, 1092 (D. Haw. 2011).  Courts may also dismiss a DJA claim if "declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."  Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).  Generally, a declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.  Latulippe v. Harder, 574 F. Supp. 3d 870, 884 (D. Or. 2021).

#### b. Analysis.

For the reasons discussed above, Plaintiff's § 1983 claims all fail.  For the

same reasons, Plaintiff is not entitled to a judicial declaration that Defendants violated Plaintiff's constitutional rights.  Alternatively, to the extent Plaintiff is alleging DJA claims, the Court declines to exercise its equitable jurisdiction over them because (1) they are duplicative of Plaintiff's § 1983 claims; and (2) Plaintiff no longer operates a tow yard in the City of Orange.

## VI.

## CONCLUSION

For all these reasons, Defendants' motion for summary judgment (Dt. 42) is GRANTED.  The Court shall separately enter judgment against Plaintiff and for Defendants on all claims.

DATED:  August 22, 2023

KAREN E. SCOTT
United States Magistrate Judge